IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Crim. No. 4:21-CR-075 |
| | ) | |
| v. | ) | GOVERNMENT'S |
| | ) | SENTENCING |
| AUSTIN JAMES MALLORY, | ) | MEMORANDUM |
| | ) | |
| Defendant. | ) | |

# Table of Contents

INTRODUCTION ........................................................................................... 1

ADVISORY GUIDELINES RANGE ............................................................. 2
    *1. Factual Issues* ...................................................................................... 2
    *2. Guideline Issues* .................................................................................. 2
        a. USSG §2A2.1(a)(1) was appropriately applied.....................................3
        b. Defendant has not met his burden for a mitigating role reduction...........5

THE § 3553(a) FACTORS SUPPORT A SENTENCE OF 240 MONTHS' PRISON... 8

CONCLUSION............................................................................................. 10

## INTRODUCTION

Defendant hunted down members of an opposing gang so that his gang member friends could shoot at them. Defendant drove his gang member friends to the scene of the shooting, during the shooting, and away from the scene of the crime. Prior to this, he was extensively involved with this group. The Court should impose a sentence of 240 months' imprisonment.

## ADVISORY GUIDELINES RANGE

The government agrees with the advisory guidelines range contained in the PSR, which is calculated as follows:

| | |
|---|---|
| <u>Base offense level (§2A2.1(a)(1) (Count 4)</u> | <u>33</u> |
| Total offense level | 33 |
| | |
| Criminal History | I |
| | |
| Guidelines range: | 120 months' imprisonment (stat max on Count 4) + 120 months', consecutive (Count 5) = 240 months' imprisonment |

Defendant has multiple unresolved factual and guideline issues, which are further addressed below.

### 1. *Factual Issues*

Defendant raised several factual objections to the information contained in the offense conduct section of the PSR. *See generally* Dkt No. 440. Defendant's unresolved objections center around his primary arguments at trial—that he wasn't driving the Trailblazer during the gang-related shooting and that he had no idea a shooting was going to happen. The evidence presented at trial squarely rejected these arguments, as well as the remainder of the outstanding PSR objections. The Court should overrule each objection based on the trial record.

### 2. *Guideline Issues*

Defendant also objects to two guideline applications—whether the attempted first-degree murder guideline was appropriately applied, and whether a four-level mitigating role reduction applies. Dkt. No. 440 at ¶¶ 9, 12, 19. For the reasons that follow, the Court should overrule Defendant's objections on each issue.

## a. USSG §2A2.1(a)(1) was appropriately applied

The guideline for a violation of 18 U.S.C. § 1959 can be found in USSG §2E1.3. That section directs that the base offense level is either a 12 or "the offense level applicable to the underlying crime or racketeering activity."   USSG §2E1.3(a). Application Note 1 further instructs that "[i]f the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used." USSG §2E1.3, comment. (n.1).

As charged in the Indictment, and found by the jury, the underlying crime in Count 4 was Attempted Murder.   Thus, USSG §2A2.1 applies.   That section notes that a base offense level of 33 applies "if the object of the offense would have constituted first degree murder; or (2) 27 otherwise." USSG §2A2.1(a).   Application Note 1 defines "first degree murder" as that found in 18 U.S.C. § 1111.   For the reasons that follow, because the object of the offense here was first-degree attempted murder, a base offense level of 33 applies.

Pursuant to 18 U.S.C. § 1111(a), "[m]urder is the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a).   "A defendant acts with malice aforethought if he acts with specific intent to kill—the intention of 'tak[ing] the life of a human being"—or acts 'in callous and wanton disregard of the consequences to human life.'" *United States v. Conley*, (8th Cir. July 28, 2022) (per curiam) (citing and quoting to *United States v. Comly*, 998 F.3d 340, 343 (8th Cir. 2021)).   An attempted murder case requires, for malice aforethought, a specific intent to kill

versus only a callous and wanton disregard of the consequences to human life. *Braxton v. United States*, 500 U.S. 344 (1991).

Here, the jury convicted Defendant of Attempted Murder in Aid of Racketeering, or aiding and abetting the same. The underlying offense of attempted murder required a specific intent to kill, whether by Defendant himself or by his co-defendants. Dkt. No. 372 at 29-31; *see also United States v. Roan Eagle*, 867 F.2d 436, 445 (8th Cir. 1989) ("To be guilty of aiding and abetting [first-degree murder] is to be guilty as if one were a principal of the underlying offense. Aiding and abetting is not a separate crime but rather is linked to the underlying offense and shares the requisite intent of that offense."). Thus, the attempted murder guideline applies, and the only argument seems to be whether the conduct rose to first or second-degree murder. The evidence demonstrates that first degree attempted murder is the proper application.

As outlined in 18 U.S.C. § 1111(a), in order to be first degree murder, the conduct has to fit into one of the specifically identified categories. Those include "lying in wait, or any other kind of willful, deliberate, malicious, and premediated killing . . . ." 18 U.S.C. § 1111(a). The conduct here supports the "any other kind of willful, deliberate, malicious, and premediated killing" category.

Premeditation, as defined in the Eighth Circuit's Model Instruction Number 6.18.1111A-2, is a killing that is "intentional and the result of planning or deliberation." The Model Instruction further notes that "[t]he amount of time needed for premeditation of a killing depends on the person and the circumstances."

However, "[i]t must be long enough for the defendant, after forming the intent to kill, to be fully conscious of his intent, and to have thought about the killing." Eighth Circuit Model Instruction No. 6.18.111A-2.

Here, there was clear premeditation to commit the underlying murder offense. Defendant's co-defendants, Braden Shafer and Raekwon Patton, carried guns to the Merle Hay Mall on May 10, 2020. Defendant drove them there. When they saw a rival gang member, they (Shafer, Patton, Defendant, and two others) got into Defendant's Trailblazer, and Defendant stalked that rival gang member through the streets of Des Moines at the direction of his co-defendants. That chase was long enough for Shafer and Patton to be fully conscious of their intent to kill and Defendant to be fully conscious of the purpose of his co-defendants' intent to kill. And there was plenty of time for Defendant, who was driving, to, both literally and figuratively, take an alternative course. Instead, he chose to keep following the rival gang members until Patton and Shafer could shoot at them. This is hallmark premeditation. A base offense level of 33 applies.

**b. Defendant has not met his burden for a mitigating role reduction**

Defendant bears "the burden of establishing [his] entitlement to a minor-role reduction." *United States v. Durham*, 836 F.3d 903, 911 (8th Cir. 2016). USSG §3B1.2 states that "[b]ased on the defendant's role in the offense, decrease the offense level as follows (a) if the defendant was minimal participant in any criminal activity, decrease by 4 levels." USSG §3B1.2. Application Note 3(C) outlines a number of factors the court may consider in determining whether a mitigating role applies.

USSG §3B1.2, comment. (n.3(C)).  Included in that list is "the degree to which the defendant understood the scope and structure of the criminal activity. . .the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts . . . ."  USSG §3B1.2, comment. (n.3(C)). Furthermore, Application Note 4 states that "[t]he defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities or others is indicative of a role as minimal participant."  USSG §3B1.2, comment. (n.4).

"[M]erely showing the defendant was less culpable than other participants is not enough to entitle the defendant to the adjustment if the defendant was deeply involved in the offense." *United States v. Jones*, 25 F.4th 1077, 1079 (8th Cir. 2022) (quoting *United States v. Cubillos*, 474 F.3d 1114, 1120 (8th Cir. 2007) (internal quotation marks and citations omitted).  Furthermore, a participant "who is 'less culpable' but still 'deeply involved' is not *substantially* less culpable than the average participant in the criminal activity" as required for a role reduction.  *Jones*, 25 F.4th at 1079-80 (internal citations and quotations omitted).

In *United States v. Ravelo*, the Second Circuit rejected a mitigating role reduction for a defendant, in a 18 U.S.C. § 1959 case, who was part of the gang, went to pick up fellow gang members to find rival gang members to assault, supplied the vehicle, and was a passenger in the vehicle used in the gang-related shoot-out. *United States v. Ravelo*, 370 F.3d 266, 270 (2d Cir. 2004).  The Second Circuit specifically rejected the defendant's argument "that he was only following orders" as somehow

determinative of whether he was substantially less culpable than the average participant. *Id.*

The *Ravelo* case is strikingly similar to the facts here.  Defendant was extensively involved with this gang prior to the shooting.  As demonstrated by the trial evidence, Defendant associated with multiple members of this gang.  He knew and called them by their nicknames.  He bought drugs from them.  He drove them to drug deals.  He hung out with them.  He was friends with them on social media (where they repeatedly and unambiguously advertised their gang membership and activity).  And he drove them to a gang-related shooting.  Although not a formal member of OTB, Defendant was certainly deeply involved with the gang and its members/associates.

Furthermore, like in *Ravelo*, Defendant also drove his gang member friends to find rival gang members to shoot, and supplied the vehicle.  And, in fact, Defendant's conduct here was even more serious than in *Ravelo*, as Defendant was the actual driver of the vehicle used in the gang-related shoot-out, versus a passenger like in *Ravelo*.

Thus, Defendant has not met his burden for a mitigating role reduction.  He was deeply involved in the crimes at issue in this case.  Defendant drove a carload of his gang member friends to the mall.  Then, at their direction, chased down rival gang members for the purpose of shooting them.  Defendant then drove them away from the scene.  Defendant knew details about the gang and its members prior to the shooting, and he assisted the enterprise in their racketeering activities.  He was not

substantially less culpable than his co-defendants, and was deeply involved in the

crimes at issue.  The Court should overrule Defendant's objection.

## THE § 3553(a) FACTORS SUPPORT A SENTENCE OF 240 MONTHS' PRISON

The appropriate sentence to be imposed by the Court should be "sufficient but

not greater than necessary" to meet relevant sentencing objectives, which include:

1. the nature and circumstances of the offense and history and characteristics of the defendant;
2. the need for the sentence imposed –
    A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    B. to afford adequate deterrence to criminal conduct;
    C. to protect the public from further crimes of the defendant; and
    D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3. the kinds of sentences available;
4. the guideline sentencing range;
5. any pertinent policy statement;
6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
7. the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a).  For the reasons that follow, the § 3553(a) factors support a

sentence of 240 months' imprisonment, which is also the guideline range.

The Court is extremely familiar with the facts of this case, having already

sentenced three co-defendants in this case, not to mention presiding over a two-week

trial involving Defendant and two others.  Some facts, however, bear repeating.

The seriousness of Defendant's behavior cannot be overstated.  Although he

personally did not fire a gun on May 10, 2020, he made that shooting possible.

Without Defendant, Shafer and Patton could not have shot up a residential

neighborhood on a Mother's Day afternoon in 2020.  Defendant's choices on May 10, 2020, set into motion the chain of events that ended in two different shootings on May 10.  The bullets shot by Shafer and Patton while Defendant drove hit the homes and vehicles of innocent people.  Miraculously, the only person hit by a bullet in this incident was Shafer.

Defendant methodically hunted the car containing rival gang members for Shafer and Patton.  He followed it over the course of several city miles.  He followed it through numerous twists and turns of the road.   He followed it knowing exactly what was going to happen when he caught up with it.  Defendant knew what was going to happen because he knew these people.  He knew they were gang members because he was friends with them—both in person and on social media.  And as the trial made clear, social media is where the gang left no question as to what they stood for and the criminal activity they were engaged in.  Defendant hung out with these gang members.  He bought drugs from them and helped them deal drugs by providing them transportation.  Defendant knew their nicknames, and referred to them by their nicknames in both his social media interactions, as well as in his interview with the police.

Defendant's conduct in this case shows a reckless disregard for the safety of the community.  His behavior put others at risk, including innocent people.  Adding to this disregard for the safety of innocent people is Defendant's continued refusal to acknowledge even a sliver of responsibility for what he did.  In fact, Defendant cannot even manage to admit something he admitted under oath in the Iowa District Court

for Polk County, and that he admitted a shocking number of times in his post-*Miranda* interview with police—that he was driving his Trailblazer before and during the shooting.  This calls into serious question Defendant's future commitment to a law abiding life.  Defendant likes to repeatedly harp on his Boy Scout and ROTC and swim team participation when he was a child.  However, perhaps what is more telling about Defendant's character is not what he did when he was a child, but the choices that brought him here.

A sentence of 240 months' prison achieves the goals of sentencing, including the very real concern of recidivism and danger to the community.

## CONCLUSION

The Court should impose a sentence of 240 months' imprisonment.

Respectfully Submitted,

Richard D. Westphal
United States Attorney

By:  */s/ Kristin M. Herrera*
Kristin M. Herrera
Ryan W. Leemkuil
Assistant United States Attorneys
Alexa K. Perez
Special Assistant United States Attorney
United States Courthouse Annex
110 East Court Avenue, Suite 286
Des Moines, Iowa 50309-2053
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: kristin.herrera@usdoj.gov
Email: ryan.leemkuil@usdoj.gov
Email: alexa.perez@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2022, I electronically filed the foregoing with the Clerk of Court using the CM ECF system.  I hereby certify that a copy of this document was served on the parties or attorneys of record and the United States Probation Officer by:

____ U.S. Mail ____ Fax ____ Hand Delivery

_X_ ECF/Electronic filing __ Other means (email)

UNITED STATES ATTORNEY
By:    /s/Kristin M. Herrera, AUSA